# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>　　　　　　　　**Plaintiff,** | )<br>)<br>) |
| 　　**vs.** | )　**Criminal No. 04-37(Erie)** |
| | ) |
| **GERALD C. DEIMEL,** | ) |
| 　　　　　　**Defendant.** | ) |

### SENTENCING MEMORANDUM
### ON BEHALF OF GERALD C. DEIMEL

Through counsel, the Defendant, Gerald C. Deimel, files the following Sentencing

Memorandum setting forth all factors that the court should consider in determining what type

and length of sentence is sufficient, but not greater than necessary, to comply with the statutory

directives set forth in 18 U.S.C. § 3553(a). It is reasoned herein that careful consideration of

these statutory factors, including the nature of the offense, the history and character of Mr.

Deimel, and the needs of the public and the victim demonstrate that a sentence of from probation

to no more than 4 months incarceration is minimally sufficient to meet these purposes.


### Sentencing Under *Booker*

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in

Blakeley v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466

(2000) applies to the Federal Sentencing Guidelines. United States v. Booker, 125 S. Ct. 738,

756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no

relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely

and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the

Court. Id. at 751. Accordingly, reaffirming its holding in Apprendi, the court concluded the following:

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Id. at 756.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon the Guidelines' mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. at 757 instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker,

> Requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a).

Booker, 125 S. Ct. at 757. Thus, under Booker, sentencing courts must treat the Guidelines as just one of a number of sentencing factors that are set forth in 18 U.S.C. § 3553(a).

The paramount directive under § 3553(a) is that the sentence in each case must be "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(b) to afford adequate deterrence to criminal conduct;

(c) to protect the public from further crimes of the defendant; and

(d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Moreover, in arriving at the minimally sufficient sentence to meet these purposes, § 3553(a) further directs sentencing courts to consider the following factors:

1. "the nature and circumstances of the offense and the history and characteristics of the defendant" [3553(a)(1)];

2. "the kinds of sentences available" [3553(a)(3)];

3. "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" [3553(a)(6)]; and

4. "the need to provide restitution to any victims of the offense. [3553(a)(7).

A series of other statutes provide further direction to the sentencing court. For example, under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extend imprisonment is appropriate based on the § 3553(a) factors, the judge is required to "recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation (emphasis added).

Also, under 18 U.S.C. § 3663, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1. Thus, post-<u>Booker</u> sentences allow for consideration of factors previously precluded from consideration under the guidelines, as well as unusual factors present in a case. As Judge Adelman of the Eastern District of Wisconsin recently wrote:

. . .under § 3553(a)(1) a sentencing court must consider the "history and characteristics of

3

the defendant." But under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history. *Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range.*

United States v. Ranum, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005) (emphasis added). See also

United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb 3, 2005)

(sentence of little more than half the upper guideline range imposed, taking into account

defendant's status as a veteran, his strong family ties, his medical condition, and fact that

defendant, who was 57 at sentencing, would upon his release from prison have a very low

likelihood of recidivism since recidivism reduces with age, citing Report of the U.S. Sentencing

Commission, Measuring Recidivism: the Criminal History Computation of the Federal

Sentencing Guidelines, May 2004); United States v. Carmona-Rodriguez, 2005 WL 840464,

(S.D.N.Y., April 11, 2005) (55 year-old defendant convicted of conspiring to distribute heroin,

with applicable 46-57 month advisory guideline range sentenced to 30 months based upon low

risk of recidivism and health issues); United States v. Blume, 2005, WL 356816 (S.D.N.Y. Feb.

14, 2005) (defendant sentenced to probation because it represented his first criminal conviction

and he appeared to pose no threat to the safety of the community).

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically

apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits

majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and

the remedial majority in Booker, directing courts to consider all of the § 3553(a) factors, many of

4

which the guidelines either reject or ignore.  United States V. Ranum, supra. at 985-86.  Further,

in considering the § 3553(a) factors, courts should not follow the old "departure" methodology.

Rather, a sentence outside the calculated guideline range can now be justified by factors that

would not have been permitted to have warranted a departure from the previously-mandated

guideline scheme.  "Courts are free to disagree (with the limited guideline departure application),

in individual cases and in the exercise of discretion . . . so long as the ultimate sentence is

reasonable and carefully supported by reasons tied to the § 3553(a) factors."  United States v.

Ranum, supra.

As another district court judge has correctly observed, any approach which automatically

gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime

found to be constitutionally inform in Booker."  United States v. Jaber, 2005 WL 605787 *4 (D.

Mass. March 16, 2005).  See also United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb.

9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must

consider in determining an appropriate individualized sentence"), rehearing en banc granted, 401

F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the
> recited factors (including the guidelines), has full discretion, as full as what he possessed
> before the Act was passed, to sentence anywhere within the statutory range.  If the
> majority thought otherwise – if it thought the Guidelines not only had to be 'considered'
> (as the amputated statute requires) but had generally to be followed – its opinion would
> surely say so.

Booker, 125 S.Ct. (Scalia, J., dissenting in part).  Likewise, if the remedial majority thought the

guidelines had to be given "heavy weight", its opinion would have said so.  The remedial

majority clearly understood that giving any special weight to the guideline range relative to the

other § 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider *all* of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should take precedence over the guidelines. See, United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence to be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

## Application of the Statutory Sentencing Factors

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater that necessary to satisfy the purposes of sentencing:

1. **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

   A. **Nature and Circumstances of the Offense**

The nature of the offense conduct is reviewed in the pre-sentence report for this case, with specific objections noted in the Position of Defendant with Respect to Pre-Sentence Report (hereinafter, "Positions Statement"), which the defendant previously filed. Paragraphs 6-29 of the pre-sentence report sets forth the conduct to which the defendant has pled guilty; and defendant does not dispute the nature of the conduct described. Defendant has objected, though, to the government's representation that defendant was solely responsible for and solely supervised and masterminded and benefited from the conduct that forms the bases of this Health

Care Fraud prosecution. As discussed in his Position Statement, Attorney David Keck, defendant's business partner and associate in the companies that did work for the victim, FG Trust, and the solicitor for the FG Trust Board, was both culpable and personally benefited to a similar --- and in some aspects, a greater --- level than defendant. (Rather that reiterate the particulars of this, counsel refers the Court to the Position Statement.)

That said, defendant has pled guilty and continues to accept responsibility for his conduct, and he acknowledges that the nature of the offense conduct is quite serious. Initially, from the FG Trust's commencement in 1995 through June , 1997, as documented in the pre-sentence report, the FG Trust and the other respective companies created and managed by defendant and Attorney Keck, were well-run and appropriately managed, much to the benefit of FG Trust. All funds of the FG Trust were handled and applied appropriately; all checks, invoices and expenses of the Trust were properly disclosed and accounted for; and the FG Trust member companies experienced savings in their self-funded workmen's compensation payouts.

From July 1997 through October 1999, when the government executed search warrants for the business records of the companies defendant and Attorney Keck owned (WCCI, the administrator for the FG Trust funds; PCA, the claims service company that processed and paid the workmen's compensation claims filed by the employees of the FG Trust member foundries; and Comp RP, the re-pricing company for which Keck named his wife president), things changed. Defendant has acknowledged his involvement over that time period in mishandling FG Trust funds, unlawfully providing payments from the Trust's checking account to the companies had and Attorney Keck owned. Contemporaneous, truthful disclosure of the payments and/or the justification for same was not provided to the FG Trust Board. And when prodded for the supporting documentation in July and August of 1999, defendant (with Keck's knowledge and/or

approval) provided fictitious invoices in an attempt to conceal the improprieties. Defendant has

agreed that the FG Trust sustained a loss of $90,071.81, as set forth in the pre-sentence report,

and he acknowledges that both he and Attorney Keck used said money for their personal use.

For all these reasons, defendant understands and accepts that the offense conduct at issue is

serious. Indeed, that is why he has agreed that the advisory sentencing guideline ranges should

be enhance by upward adjustments for loss amount [U.S.S.G. § 2F1.1(b)(G) (6 upward levels)],

"more than minimum planning" [U.S.S.G. § 2F1.1(b)(2)(A) (2 upward levels)], and "abuse of

position of trust" [U.S.S.G. § 3B1.3 (2 upward levels)].

For sentencing purposes, it may become relevant to discuss the circumstances as to why

the above summarized offense conduct came about starting in July 1997. Remember, all went

well with the companies owned by defendant and Attorney Keck from the FG Trust start-up in

1995 through July 1997. What, if anything changed by July 1997? To the extent deemed

necessary, defendant may develop this at the time of sentencing.


### B.    History and Characteristics of Mr. Deimel

The sources for the information presented here are the pre-sentence report and the

numerous letters written to Your Honor by family members and friends of Mr. Deimel. Copies

of those character letters are attached hereto and incorporated herein as exhibits to this

Memorandum.

### 1)    Age

The district courts in United States v. Nellum, supra. ( defendant 57 years old), United

States v. Carmona-Rodriguez, supra. (defendant 55 years old) and United States v. Ranum,

supra. (defendant 50 years old), each cited the defendant's age as one of the factors relied upon

to justify imposing a sentence significantly less than the advisory guideline range. Those cases

cited the Report of the U. S. Sentencing Commission, Measuring Recidivism: the Criminal

History Computation of the Federal Sentencing Guidelines, May 2004 which found that the

likelihood of recidivism reduces with age. At 61 years old, Mr. Deimel is older than the

defendants in all three of these cases, and for the same, well-founded logic, a sentence

significantly less than the advisory guideline range in his case is called for.

### 2)    Family Ties

Also recognized post-Booker as a factor justifying imposition of a sentence less than the

advisory guideline range are a defendant's positive family ties. United States V. Nellum, supra.

(defendant's "strong family ties"); United States v. Ranum, supra. (defendant noted as "a

devoted family man ... who did an excellent job of raising two daughters ... also provides

support for his elderly  parents"). Here, the information presented to the Court clearly

contributes to justifying a sentence well below the advisory guideline range.

From all accounts, Mr. Deimel is the second eldest of four siblings of a close-knit, hard-

working, caring and extremely productive family, which has contributed to their community as

educators, public school administrators and a physician. The defendant is described as the

family's long-standing pillar of strength, especially after his father died in 1967, who often

sacrificed for the benefit of his siblings and who has remained the go-to guy for his mother and

siblings, always being there for them when needed. His sister, Georgia Deimel, describes how

the defendant opted to accept an R.O.T.C. scholarship to Kent State University in the mid-1960's

in order for his younger brothers to afford their college educations. His brother, Dr. Joseph

Deimel, writes how the defendant "volunteered to go to Vietnam which gave me the opportunity

to go to Medical school for which I will always be grateful". One almost gets a sense of Mr.

Deimel as "It's a Wonderful Life's" George Bailey from these descriptions from his friends and
family members.

In addition, Mr. Deimel is repeatedly described as a dedicated and devoted father to his
three children.  The two eldest are in their 30's, one working in the boat repair business in
Annapolis, Md., and the other in a computer firm in Pittsburgh.  The youngest is his 15 year-old
daughter, who is described by her aunt and uncles as "adores her father" and "the apple of his
eye".  Mr. Deimel has always been passionately involved with his daughter's school and extra-
curricular activities, and they remain extremely dedicated to each other.  Any significant term of
incarceration will most certainly have a profoundly adverse impact upon his daughter.

Mr. Deimel has been married twice, his second one ending in divorce, after nearly 17
years of marriage, on August 15, 2005.  The government executed search warrants for the
companies owned by Mr. Deimel and Attorney Keck in October 1999, and the effects and direct
and collateral consequences since that time, over the past 6 years and especially since his
indictment in this case in August 2004 led to marital difficulties that culminated in this divorce.

### 3)    Military Service

Status as a veteran is another factor relied upon by courts to sentence below the advisory
guideline range.  See, e.g., United States v. Nellum, supra.   Mr. Deimel has an exemplary record
of having served his country ably and admirably in the military.

As previously mentioned, he successfully completed the R.O.T.C. program at Kent State
University, and upon his 1967 graduation from that university, he entered the United States Air
Force.  He served in the Air Force for nearly 5 years, as an air intelligence officer specialist, and
was honorably discharged in 1972 at the rank of captain.  Almost 4 of his 5 service years were
served overseas, including 2 years in Viet Nam, where he was a briefing officer for a four-star

general.  He distinguished himself by earning numerous medals, citations and campaign ribbons,

including the Bronze Star, the Meritorious Service Award and Good Conduct Medal.

Mr. Deimel's service to his country needs to count for something at his time of

sentencing.

### 4)    No Prior Criminal Convictions

District courts have also cited the absence of a defendant's prior criminal record as

warranting a sentence under the advisory guideline range.  United States v. Blume, supra.,

United States v. Ranum, supra.  Mr. Deimel has no prior criminal convictions.

### 5)    Other Characteristics/History of Mr. Deimel

There are other characteristics factors that support Mr. Deimel's request at sentencing.

For example, besides his undergraduate degree, he completed a Master's Degree in public

administration while still serving in the U.S. Air Force in Germany.

After the search warrants in the investigation of the instant cases were executed in

October 1999, WCCI, the trust administration company half-owned by Mr. Deimel ceased to

exist.  Since that time up through the present, he has worked for two different, local

telemarketing companies.  In addition, since 2001, he has obtained 7 different, low-income

residential properties in Erie, Pennsylvania, which he personally maintains, repairs, supervises

and rents.  In short, he has continued to work hard, which the character letters attest he has done

since his teen-age years, to provide for his family obligations, particularly to his daughter, and to

prepare for his restitution obligations to the victim in this case (see below).

He has also given back to the community for many, many years.  He served as the long-

time, volunteer supervisor of Erie's Reyburn Sailing School, teaching sailing on Lake Erie to

children and adults of nearly all ages and skill levels.  He also for many years served as a mentor

for a number of Gannon University interns and co-op students enrolled in that college's Business School. (See, letters of Dr. David Frew and Stephen and Debbie Giewont).

Finally, the many attached letters attest to his good character as a caring, generous individual who has given much of himself for others over the years.

**2.    The Need for the Sentence Imposed to be Sufficient, but not Greater than Necessary to Meet Certain Statutory Objectives, among them:**

   **A.    To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;**

   **B.    To afford adequate deterrence to criminal conduct;**

   **C.    To protect the public from further crimes of the defendant;**

These purposes of 18 U.S.C. § 3553(a) are related, and will be discussed together. As the Court knows very well, sentencing is at best an imperfect process designed to try to best meet competing interests, which in addition to the interests of the defendant, are those recognized in the aforementioned statutory purposes. Counsel submits that a sentence of probation or minimal incarceration is the minimum sentence required to best meet these competing interests.

As a preface, one need understand the collateral consequences and costs already borne by Mr. Deimel. As mentioned above, the effects of the execution of the 1999 search warrants, and of the 6-year investigation and prosecution of this matter have not been inconsequential for Mr. Deimel. At the age of 55, he lost his livelihood. Per the plea agreement, he, for all practical purposes, has a lifetime ban on ever "serving in any capacity that involves decision making authority or custody or control of moneys, funds, assets or property or any ERISA covered employee benefit plan". In his late 50's and early 60's he has been forced to work as a telemarketer in order to try to provide for his family. The marital stress endured through this 6-

12

year period has finally resulted in his divorce from his wife and disruption of his fatherhood for

his daughter.  Finally, he understands that he will be required to make restitution of the entire

agreed-upon amount of $90,071.81, even though his former partner and associate, Attorney Keck

received as much or more of the above wrongfully-obtained sum of money  from the victim, FG

Trust.  Considering all of this, as well as Mr. Deimel's age and background, as discussed above,

it is reasonable to conclude that he will not be a danger to the public.

  To the extent that sentencing and its attendant circumstances are sufficient to effectively

deter future criminal conduct on Mr. Deimel's part, it is submitted that even probation, or a

minimal term of incarceration followed by a reasonable period of supervised release, is more

than sufficient.  Such a sentence takes a man in his 60's, with no prior criminal record, with the

costs above-mentioned already borne during the past 6 years and to continue in the future, and at

the very least places him under court supervision for an extended period of time.  Mr. Deimel

would understand full well that he would be incarcerated should he ever not measure up to all of

the conditions of probation/release.  Certainly, this is sufficient to deter Mr. Deimel.

  As to deterring like conduct of others, such deterrent effects of sentencing have been

debatable for a long time.  Nonetheless, for the same reasons as noted above, it is argued that the

direct and collateral consequences of the types of sentences requested herein are sufficient to

meet this concern, as well as to reflect the seriousness of the offense and promote respect for the

law.

**3.    The Kinds of Sentences Available**

  The advisory guideline range for this case falls within Zone D of the Sentencing Table.

Post-Booker, however, the guideline "zones" are no longer controlling of how a sentence is to be

served.  Rather, the method of service is controlled by a series of statutes.  Pursuant to 18 U.S.C.

§ 3559(a), the offense to which Mr. Deimel pled is a Class D felony.  Accordingly, per 18 U.S.C.

§ 3561(a)(c), he is eligible for a probationary sentence of from 1 to 5 years probation.

**4.      The Sentencing range Established by the Sentencing Commission**

Mr. Deimel has agreed that the guideline range established by the *advisory* sentencing

guidelines is imprisonment from 12 to 18 months.  However, it must be remembered that said

range is arrived at without *any* consideration or accounting for any of the § 3553(a) sentencing

factors that now must be considered by sentencing courts.    As the court in <u>Ranum</u> stated:

> The guidelines' prohibition of considering these factors cannot be squared with the §
> 3553 (a)(1) requirement that the court evaluate the "history and characteristics" of the
> defendant.  The only aspect of a defendant's history that the guidelines permit courts to
> consider is criminal history.  Thus, in cases in which a defendant's history and character
> are positive, consideration of all of the § 3553(a) factors might call for a sentence outside
> the guideline range.

<u>Id.</u>, 353 F. Supp. 2d at 986.  This is such a case where the defendant's positive characteristics

and history compel imposition of a sentence less than the guideline range.

**5.      The Need to Avoid Unwarranted Disparities**

There is a long tradition of avoiding unwarranted disparity in treatment among those

similarly situated under the law.  Usually, this focuses on disparate treatment amongst similarly

situated co-defendants, or at least a defendant facing sentencing and prior defendants already

sentenced for similar offenses/circumstances.  Whereas before <u>Booker,</u> a court could not

consider such disparity between co-defendants as a basis for imposing a sentence below the

guideline range, after <u>Booker</u> a court may do so.  <u>United States v. Hensley</u>, 363 F. Supp. 2d 843

(W.D. Va. March 29, 2005)(concluding that because of similarity in conduct, a sentence below

guideline range for one defendant was proper, therefore imposing a sentence of 12 months

instead of 37-46 months).

In the case at bar the disparate treatment is not between co-defendants, but between the defendant and Attorney Keck, his business partner and associate, whom the government for still unexplained reasons never charged. (The government has confirmed for counsel that this is not a case of Mr. Keck receiving favorable treatment because he was a confidential informant, or a cooperating witness: he was neither.) Defendant's previously-filed Position of Defendant with Respect to Pre-Sentence Report sets forth Attorney Keck's inexorably intertwined ownership, and involvement in the creation, operations, management, etc. of the companies used to victimize the FG Trust in this case; and Keck's knowledge, approval, participation in and benefiting from the offense conduct. Yet Keck was never charged, and never will be, because the statute of limitations for doing so has expired. He will never go through the prosecution Mr. Deimel has. He will never face a sentencing proceeding. He will never endure the collateral costs borne and to be borne by Mr. Deimel. And he will never be forced to participate with Mr. Deimel in making restitution event though it is without dispute that he received much of the unlawfully obtained FG Trust funds. (Defendant will produce as exhibits at the sentencing proceeding, for example, copies of income tax returns to corroborate this claim). Counsel submits that this gross disparity in treatment between two individuals whose similar conduct exposed them to the same prosecution is unwarranted and compels further reduction of any sentence in this case significantly below the advisory guideline range. See, United States v. Carey, 368 F. Supp.2d 891 (E.D.Wis. April 25, 2005) (court reduced sentence in social security disability benefits fraud case, because government chose to prosecute the case under wire fraud statutes instead of different offense).

**6.     The Need to Provide Restitution to the Victim**

As pointed out in <u>Ranum</u>, 353 F. Supp. 2d at 987:

> In addition, § 3553(a)(7) directs courts to consider "the need to provide restitution to any victims of the offense". In many cases, imposing a sentence of no or only a short period of imprisonment will nest accomplish this goal by allowing the defendant to work and pay back the victim. The guidelines do not account for this. In fact, the mandatory guideline regime forbid departures to facilitate restitution. <u>United States v. Seacott.,</u> 15 F.3d 1390, 1388-89 (7th Cir. 1994).

In the instant case Mr. Deimel has agreed that restitution is owing in an amount slightly over $90,000. He has imparted to the United States Probation Office an ambitious, aggressive plan whereby he believes he can repay --- in full --- this entire amount. However, this restitution plan is contingent upon his being able to remain out of prison so he can continue to maintain and operate and manage his 7 rental income property units. He currently has nobody else to do that in his absence. It is obvious that the restitution in this case can be paid most efficiently for the sake of the victim if Mr. Deimel does not go to prison, or at least is not incarcerated for a substantial period. Naturally, incarceration and the period of time shortly after any period of incarceration will diminish his ability to manage, maintain and collect rents from these income properties, thus hampering the prompt payment of restitution to the victim, which is in everyone's best interests.

In consideration of all of the foregoing factors, counsel submits that the type of sentence "sufficient, but not greater than necessary to satisfy the purposes of sentencing" is either a sentence of probation of from 3 to 5 years probation, or a minimal sentence of incarceration significantly less than the advisory guideline range followed by a period of supervised release up to 3 years, and restitution in the agreed amount of $90, 071.81. <u>United States v. Ranum, supra.,</u> is particularly supportive of such a sentence in the instant case, as the facts and applicable

16

sentencing factors in <u>Ranum</u> are so unusually similar to those in the case at bar. Accordingly, it is apropos to discuss and compare the facts in <u>Ranum</u> with the facts of Mr. Deimel's case, and to consider how the district court in <u>Ranum</u> resolved them for sentencing purposes.

**<u>The Ranum Facts</u>**

The defendant in <u>Ranum</u> was a senior loan officer at a bank, whose duties included managing the bank's loan portfolio and evaluating commercial loan applications. Mr. Deimel in the case at bar was the administrator for the FG Trust, whose duties included managing the Trust's funds and checking accounts. The <u>Ranum</u> defendant was authorized to secure loans up to $300,000 on his own authority, but had to report to the bank's credit committee any transactions in excess of $150,000. Mr. Deimel had similar reporting requirements and limits placed upon his ability to issue checks or expend resources of the FG Trust, although in amounts much less than those in <u>Ranum.</u>

The <u>Ranum</u> defendant's misconduct involved a stream of unauthorized and unreported and/or falsely reported transactions he engaged in over a one-plus year period with a company (GLC) starting up a cruise ship operation on the Great Lakes. Initially, he issued a number of letters of credit to GLC totaling $570,000, but didn't report or obtain the prior, required approval from the bank credit committee. He then loaned GLC $100,000, and again never reported or obtained approval for same, even though in conjunction with the letters of credit, this exceeded his lending authority. Next, he issued yet another letter of credit to GLC, this one in the amount of $580,000; no reporting or prior approval was obtained. A second loan was then given to GLC, this one in the amount of $154,000; again, no reporting and no prior approval. The defendant then loaned $580,000 of additional bank money to GLC. This time he obtained prior approval from the credit committee, but only after knowingly making false statements in order to

17

secure the loan for GLC. Specifically, he advised the bank committee that the loan was "cash collateralized" and "risk free", even though he knew that GLC did not have the cash or assets to collateralize the loan. He then loaned $300,000 to one of GLC's owners, personally, even though he knew such a personal loan was against bank policy. No prior approval or reporting of this transaction was obtained or made.

Subsequently, GLC collapsed, and the total loss sustained by the bank as a result of the Ranum defendant's misapplication of its funds was over one million dollars, specifically $1,134,000. By comparison, in the case at bar, the agreed upon loss sustained by FG Trust was a little over $90,000. In Ranum, the defendant attempted to conceal the misappropriation of the bank funds, and made reports of what he had done only after several months of prodding from the bank's lawyers. This is similar to the circumstances in the instant case.

Ranum was charged with misapplication of bank funds by a loan officer and making false statements in connection with a loan application. Mr. Deimel was charged with health care fraud and false statements. Ranum did not accept responsibility, but rather maintained his innocence and went to trial. He was convicted on all counts. By contrast, Mr. Deimel did accept responsibility and pled guilty pursuant to a plea agreement with the government.

The advisory sentencing guideline total offense level in Ranum was enhanced by amount of loss, more than minimal planning, and abuse of trust, and totaled 21 points. Mr. Deimel's total offense level of 13 was enhanced by the same 3 upward adjustments. Both Ranum and Mr. Deimel had no prior criminal convictions, and therefore a criminal history category of I. In Ranum, the resulting advisory guideline range was 37-46 months. In Mr. Deimel's case it is 12-18 months.

Against this background, the court in Ranum imposed a post-Booker sentence of *one year and one day,* or just 1/3 to 1/4 of the advisory guideline range.  The Ranum court's resolution and conclusion is instructive to this case.

> First, I considered the nature of the offense.  The offense was serious for several reasons, the primary one being the amount of the loss.  In addition, defendant made repeated loans outside of his authority over an extended period of time, abusing his employer's trust.  When things started to go badly, defendant was not honest with his employer, recklessly loaned GLC more money and attempted to conceal what he had done.

The same could be said about the nature of the offense in the instant case.  It is true that the Ranum court noted that the defendant's culpability was mitigated in that he did not obtain any of the misappropriated funds for his personal use.  However, it must be remembered that the amount of the loss in Ranum was over 12 times the amount in the case at bar.  The court in Ranum then continued its analysis by considering the history and character of the defendant.

> I then considered the second general category – the history and character of defendant.  The factors in this category weighed heavily in defendant's favor.  He is fifty years old, had no prior record, a solid employment history, and is a devoted family man.  He has two children, one of whom is still in school.  Prior to his recent marriage, he was a single father who did an excellent job of raising two daughters.  He also provides care and support for his elderly parents. ... I concluded that defendant's absence would have a profoundly adverse impact on both his children and his parents.  ...
>
> In addition, numerous friends and business associates wrote letters attesting to defendant's good character. ... I also noted that defendant's conviction had significant collateral effects on him.  After his termination by State financial Bank, defendant obtained a good job at Anchor Bank.  As a result of the conviction he lost that job and will be unable to work in banking again.
>
> Under all of the circumstances, I concluded that defendant is not a danger to society and is highly unlikely to reoffend.

Add Mr. Deimel's exemplary military service record to the above mix and you have almost a mirror image of the instant case.  As reasoned in Ranum, the factors in this category weigh heavily in Mr. Deimel's favor.  Finally the Ranum court balanced the remaining § 3553(a)

factors:

> Finally, I considered the needs of the public and the victim. Because the case was so unusual, I doubted whether a prison sentence would have much value as a deterrent. Loan officers will generally follow bank rules because their jobs depend on it. As previously stated, I also concluded that the public did not need to be protected from defendant. As for the victim, the bank, defendant's ability to make restitution would be enhanced if he was incarcerated for an overly long time.

> Nevertheless, in order to promote respect for the law and in recognition of the significant loss to the bank, I concluded that defendant had to be confined for a significant period of time. However, I concluded that the sentence called for by the guidelines, 37-46 months, was much greater than necessary to satisfy the purposes of sentencing set forth in § 3553(a).

The sentence imposed in Ranum was one year and one day, followed by 5 years of supervised release. This represented a well-reasoned, carefully considered sentence which constituted a period of incarceration of 1/3 to 1/4 of the advisory guideline range. Thus, a particularly strong case can --- and is --- made for the proposition that a sentence in Mr. Deimel's case of anything more than 4 months incarceration is greater than necessary to meet the aforementioned statutory purposes.

## Conclusion

For the foregoing reasons, Mr. Deimel, through counsel, respectfully submits that a sentence of a significant period of probation, or in the alternative of incarceration no greater than 4 months, followed by a significant period of supervised release is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Elliot J. Segel, Esq.
Counsel for Defendant

20

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal No. 04-37(Erie) |
| | ) | |
| GERALD C. DEIMEL, | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Sentencing

Memorandum on behalf of Gerald C. Deimel was served by U.S. First Class Mail and facsimile,

upon Assistant United States Attorney James Wilson, 400 U.S. Post Office and Courthouse

Building, 700 Grant Street, Pittsburgh, Pennsylvania 15219, on the 24th day of October, 2005.

SEGEL & SOLYMOSI

By: _____

Elliot J. Segel, Esquire
Attorney for Defendant

6